IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| SARAH DOLK, PERSONAL § <br> REPRESENTATIVE OF ESTATE OF, § <br> DEVD ROBERTS, Deceased § <br> PLAINTIFF § <br> § <br> v. § <br> § <br> SCIENCE APPLICATIONS § <br> INTERNATIONAL CORPORATION § <br> d/b/a SAIC, STEVEN COLLINS SMITH, § <br> Ph.D., and ROBERT COLLINS, § <br> DEFENDANTS § | CAUSE NO._____ |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF THIS COURT:

Sarah Dolk, as Personal Representative of the Estate of Devd Roberts, Plaintiff, files this Original Complaint against Science Applications International Corporation d/b/a SAIC, Steven Collins Smith, Ph.D., and Robert Collins, Defendants, and shows the Court and Jury as follows:

### INTRODUCTION

1. This is an employment discrimination and retaliation case. SAIC employed Mr. Roberts as a network engineer/systems architect working on one or more United States military contract(s). SAIC and the military officials who worked with Mr. Roberts recognized him as an excellent employee. However, after Mr. Roberts raised concerns that SAIC was violating the law, grossly mismanaging the contract(s) and abusing its authority, SAIC retaliated against him. SAIC also discriminated against Mr. Roberts because he had PTSD as a result of his honorable service for the US military in Iraq. SAIC ultimately terminated Mr. Roberts' employment because he opposed SAIC's illegal conduct and because of his disability. The Estate of Mr. Roberts brings this suit so that SAIC and the other Defendants are held accountable for their illegal conduct and

1

the severe damage that was done to Mr. Roberts. This suit is also brought to help end SAIC's illegal practices and actions that harm other SAIC employees, the US government and military, and the citizens of this country.

## JURISDICTION AND VENUE

2. This action involves a federal question under the National Defense Authorization Act ("NDAA") , 10 U.S.C. § 4701, 41 U.S.C. § 4712, 10 U.S.C. § 2409, 41 U.S.C. § 2409 and/or other applicable codification, as amended, the False Claims Act, 31 U.S.C. §3730 et seq., as amended as amended, the Americans With Disabilities Act (as amended), ("ADA"), 42 U.S.C. §12101 et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et sec., as amended,  As such, jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(3).

3. Venue is proper within the District of New Mexico, pursuant to 28 U.S.C. § 1391 because the events establishing the basis for Plaintiff's cause of action occurred within that district.

## JURY DEMAND

4. Plaintiff requests a jury trial.

## PARTIES

5. Plaintiff Sarah Dolk (aka Sally Dolk), as Personal Representative of the Estate of Devd Roberts, is an individual who was appointed Personal Representative of the Estate of Devd Roberts under New Mexico law. Ms. Dolk was Mr. Roberts' wife. At the time of his death and at all material times, Devd Roberts was a citizen of the United States and Bernalillo County in New Mexico. At all material times, Mr. Roberts was employed by Defendants in Albuquerque, New Mexico. Mr. Roberts would have been entitled to bring this suit and recover damages from Defendants had he lived. Therefore, these causes of action survived and upon his death accrued to his estate and/or heirs, and his Personal Representative is authorized to bring this action.

6. Defendant Science Applications International Corporation d/b/a SAIC is a Delaware corporation doing business in New Mexico. Defendant SAIC may be served process via its registered agent, Corporation Service Company, 110 E. Broadway St, Hobbs, NM 88240.

7. Defendant Steven Collins Smith, Ph.D. is an individual who at all relevant times was employed by SAIC as a management employee with supervisory authority over Mr. Roberts and who conducted business in New Mexico. Dr. Smith resides in Colorado and can be served at his place of residence, 10340 Fairlawn Trail, Highlands Ranch, CO 80130.

8. Defendant Robert Collins is an individual who at all relevant times was employed by SAIC as a management employee with supervisory authority over Mr. Roberts and who conducted business in New Mexico. Mr. Collins resides in Colorado and can be served at his place of residence, 11011 Anderson Ave, Franktown, CO 80116.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES AND TIMELINESS OF SUIT

9. Plaintiff filed a complaint with the Office of Inspector General of the Department of Defense ("DoD") under the NDAA within three years after the date(s) on which Defendant SAIC took actions in reprisal against Plaintiff. The DoD opened an investigation and more than 210 days have passed since the submission of Mr. Roberts' complaint and/or within two years of exhaustion of administrative remedies.

10. Plaintiff filed a Charge of Discrimination within 300 days of Defendant's illegal actions concerning his employment. The Charge was dual filed with the U.S. Equal Employment Opportunity Commission ("EEOC") and the New Mexico Human Rights Bureau ("NMHRB"). On or about October 31, 2023, the EEOC issued a "Determination and Notice of Rights" letter from the EEOC. On or about January 22, 2024, the NMHRB issued an "Order of Non-Determination." This suit is filed within 90 days of Plaintiff's receipt of the EEOC's Determination

and the NMHRB's Order.

11.     This suit is filed within three years of when Defendant SAIC retaliated against and terminated Mr. Roberts' employment.

12.     All conditions precedent to this suit have been met.

## FACTS

13.     SAIC is a major military defense contractor for the United States Department of Defense headquartered in Reston, Virginia.

14.     SAIC has a history of illegal conduct on contracts with the US government. For example, in or about June, 2020, SAIC entered into a $5,982,865 settlement with the US government as a result of charges that SAIC violated the federal False Claims Act, including falsely and fraudulently billing the government and mismanagement of a U.S. Army contract. https://www.justice.gov/usao-sdca/pr/defense-contractor-saic-pays-598-million-settle-false-claims-act-investigation.

15.     In or about 2014, SAIC entered into a $1.5 million settlement with US prosecutors in a False Claims Act case in which it was alleged that SAIC knowingly engaged in prohibited conflicts of interest as a contractor for the U.S. Nuclear Regulatory Commission. https://www.justice.gov/opa/pr/science-applications-international-corporation-agrees-pay-15-million-resolve-alleged-false.

16.     In or about 2013, SAIC entered into an $11.75 million settlement with the US government in another False Claims Act case in New Mexico. In contracts for the training of first responders to prevent and respond to terrorism events, SAIC falsely represented that it would use far more expensive personnel to carry out the work than it intended to use and actually did use. resulting in inflated charges to the United States. https://www.justice.gov/opa/pr/science-

applications-international-corporation-pays-1175-million-settle-false-claims

17. In or about 2012, SAIC agreed to pay $500 million to resolve criminal claims that the company defrauded New York City as part of a contract to automate time keeping for city employees. https://www.reuters.com/article/idUSBRE82D14B/

18. SAIC hired Mr. Roberts as a Senior Network Engineer in or about October 2019 in Albuquerque, New Mexico to work on projects for the Department of Defense. Defendants were aware that Mr. Roberts was an experienced systems engineer/architect with highly regarded professional certifications and hired him because of his strong qualifications, knowledge and abilities.

19. Defendants were also aware that Mr. Roberts had honorably served our country in the United States military and in active duty in Iraq.

20. The service that Mr. Roberts performed for our country in Iraq was extremely difficult and traumatic. As a result, Mr. Roberts was diagnosed with Post Traumatic Stress Disorder ("PTSD").

21. Defendants were aware that Mr. Roberts was a disabled veteran with PTSD.

22. SAIC approved a reasonable accommodation relating to Mr. Roberts' PTSD: allowing Mr. Roberts to wear open-toed sandals at work. This was a tool that had been recommended to him by a mental health professional when he was no longer in combat. For Mr. Roberts, the combat boots he wore in Iraq were associated with his traumatic experiences. As recommended by his counselor, Mr. Roberts began wearing open-toed sandals so that he could look down at his feet and have visual and physical reassurance that he was no longer in Iraq in a combat situation. Mr. Roberts' wearing sandals at work instead of traditional dress shoes was unusual and stood out in the SAIC work environment. Mr. Roberts openly told those with whom

he worked why he wore sandals when the topic was raised and appropriate.

23. Mr. Roberts worked hard to rise above his PTSD disability and was an outstanding employee. SAIC management, coworkers, and SAIC's government clients recognized Mr. Roberts as a knowledgeable, resourceful and hard-working employee. SAIC management, coworkers and government customers regularly praised Mr. Roberts for his excellent work.

24. While at SAIC, the company assigned Mr. Roberts to work on the Engineering, Development, Integration, and Sustainment ("EDIS") project, which was part of SAIC's work for the US Air Force and military through contracts with the US government. Contracts relating to the EDIS project included FA8818-20-D-0009. Included as part of the contracts were provisions that prohibited violations of law, including discrimination on the basis of sex (52.222.26, "Equal Opportunity"), disability (52.222-36 "Equal Opportunity For Workers With Disabilities"), and status as a veteran (52.222-35 Equal Opportunity For Veterans).

25. SAIC assigned Defendant Smith to be the EDIS Program Director. Defendant Smith had supervisory authority over Mr. Roberts.

26. SAIC assigned Defendant Collins to be the EDIS Deputy Program Director. Defendant Collins had supervisory authority over Mr. Roberts.

27. Beginning in approximately the summer of 2020, SAIC and Program Director Smith selected a highly skilled female employee to be Technical Director/Chief Engineer of the EDIS project. This Technical Director/Chief Engineer served as Mr. Roberts' immediate supervisor. Mr. Roberts as well as other SAIC employees who worked under and with this Technical Director/Chief Engineer found her to be an excellent leader on the EDIS project.

28. Women tend to be underrepresented in many science and technology fields generally and also in military and defense contractor leadership. The female Technical

Director/Chief Engineer was the only female manager at SAIC working on the EDIS project.

29. While the female Technical Director/Chief Engineer was working on the EDIS project, SAIC management, including EDIS Program Director Smith and Deputy Program Manager Collins, began discriminating against and treating her worse and differently because she is a woman. Defendants also retaliated against her because she opposed this discrimination. The discrimination and retaliation included undermining and talking about her in a demeaning way behind her back with her subordinate employees, treating her worse than other male management employees, and in approximately early December 2020, removing her from the project and replacing her with a much less qualified male.

30. On or about December 22, 2020, after SAIC removed the female Technical Director/Chief Engineer from the EDIS program, Mr. Roberts sent a written email complaint to Ron Miller, SAIC's Director of Launch and Missile Programs, and Employee Relations Manager, Keisha Morris. In his complaint, Mr. Roberts opposed SAIC's gender discrimination towards the female Technical Director/Chief Engineer, as well as SAIC's gross mismanagement of government contracts, abuse of authority and other violations of law.

31. In Mr. Roberts' complaint, he opposed SAIC's treatment of the Technical Director/Chief Engineer as discrimination based on sex, stating that "the perception [on the team] was, line up with [the female Technical Director/Chief Engineer] the process, and you got stuck with the work. Line up with the 'good old boys' club forming at the top and you can take short cuts and be protected . . . Three white men, all friends, all equally committed to protecting each other, not the company or contract, leading the team . . . the look is a good old boys' club and all the evidence points to it." Mr. Roberts also talked about the "gender and ethnic diversity" that the female Technical Director/Chief Engineer and others brought to the team and how the gender

7

diversity was lost with SAIC's removal of her. Mr. Roberts also talked about SAIC's gross mismanagement of the contract and/or abuse of authority, including that specifically of Program Director/Defendant Smith.

32. Mr. Roberts also reported to SAIC management at other times that SAIC was engaging in other illegal conduct in connection with its contracts with the US military, including illegally billing and defrauding the US government, not complying with legal/contracting requirements including requirements for employee security clearance, approvals for system changes, abuse of authority and other examples of gross mismanagement.

33. Mr. Roberts' reports of violations of law, contract requirements, gross mismanagement and/or abuse of authority included, but are not limited to, an email sent on or about January 7, 2021, to SAIC management, including Defendants Program Director Smith and Deputy Director Collins. Mr. Roberts reported that SAIC was not complying with DoD instructions – including 8140/8570 or other regulations – which required certain qualifications and certifications for employees who work on DoD contracts. By not having these qualifications but billing the government for them as if they did, Mr. Roberts' report constituted an allegation that SAIC was committing fraud and violating the law.

34. On or about January 8, 2021, Mr. Roberts reported to SAIC management, including Defendants Program Director Smith and Deputy Director Collins, that the DoD required the use of OM4 or better fiber optic cable in projects like TO44, but that SAIC was procuring OM1 fiber for the project. Mr. Roberts had specified OM4 in his original design. OM4 fiber is more expensive than OM1 and is necessary to meet density requirements, handle higher bandwidth applications and reduce maintenance costs. Mr. Roberts believed SAIC was violating DoD policies and contracting requirements and mismanaging the contract by not using OM4 fiber.

35. On information and belief, SAIC failed to investigate in response to Mr. Roberts' reports of discrimination, contract mismanagement and violations of law. SAIC and Defendants Smith and Collins did, however, retaliate against him.

36. In or about January 2021, in retaliation for Mr. Roberts' opposition to SAIC's discrimination and violations of law, Program Director Smith began looking for information to use as a basis for disciplining and ultimately terminating Mr. Roberts. Defendant Smith began working with SAIC's human resources, who sought out information from other SAIC management employees about possible performance issues of Mr. Roberts.

37. On or about February 24, 2021, SAIC retaliated against Mr. Roberts by giving him a formal "Written Warning" and threatening to terminate him if he did not show and sustain improvement or comply with other standards of performance or conduct. The Written Warning made numerous false representations and targeted Mr. Roberts because of his reports of SAIC's discrimination, contract mismanagement and violations of law. In the warning, SAIC referred to Mr. Roberts' reports of violations of law and contract mismanagement – specifically by criticizing him for sending "emails to the customer and program leadership about your position and offer unsolicited opinion that can be detrimental to the program." In the warning, SAIC accused Mr. Roberts of not being a "team player" and told him that "concerns/worries about Program direction is [sic] to be directed to the lowest level possible."

38. On or about March 10, 2021, Mr. Roberts responded to the Written Warning by providing evidence of the many false statements in the warning and reiterating concerns about SAIC's contract mismanagement. Mr. Roberts also stated that he felt SAIC was targeting him and had subjected him to a hostile work environment. As with Mr. Roberts' previous reports of discrimination and violations of law, SAIC HR never followed up with Mr. Roberts about his

response to the written warning or informed him of any investigation of the issues he had raised.

39. On or about March 24, 2021, Defendant/Deputy Program Manager Collins demanded that Mr. Roberts meet with him in-person to discuss the Written Warning. Mr. Roberts specifically asked to have human resources present during the meeting but Defendant Collins denied that request. At Mr. Roberts' request, a coworker was allowed to sit in on the meeting. During the meeting, Defendant Collins proposed that Mr. Roberts transfer to a different supervisor and that if he was successful on two projects, Collins would "rip up" the Written Warning. Mr. Roberts did not agree to the proposal for multiple reasons including that it ignored and did not address the concerns he had raised.

40. On or about March 26, 2021, SAIC's Internal Audit contacted Roberts as part of a review of how SAIC was charging the government for labor on the EDIS program. The auditor asked for copies of Work Authorization Documents ("WADs") for the projects Roberts was working on.

41. Roberts reported to the auditor, and copied his response to Defendant Collins, that he and others had not been given WADs. Mr. Roberts further reported that he was concerned about how SAIC was reporting and charging the government for his and other employees' time. Mr. Roberts informed the auditor that he had been forced to use the same charge codes for months even though he had been working on different projects. He also reported that the charge codes being used conflicted with directions from his immediate supervisor. Mr. Roberts also reported that other SAIC employees were in the same situation and he had reported these concerns before but that no action had been taken to correct the situation. By not having correct WADS and using incorrect charge codes, SAC would be misreporting and misrepresenting work on the government contracts.

42. On March 29, 2021, Roberts sent an email Director of Launch and Missile

Programs Miller and another SAIC employee reporting that SAIC had been allowing a subcontractor employee without the proper security clearance access to classified government information in violation of the law. Mr. Roberts had reported this issue months before and had been accused of "bullying" the subcontractor for pointing out the lack of security clearance.

43. On or about March 30, 2021, Defendant/Deputy Program Manager Collins sent an email with the subject line *"Direction – stay away from Dev'd [sic] Roberts"* to Defendant/Program Manager Smith, Mr. Roberts' immediate supervisor, Brent Davis, Director of Launch and Missile Programs Miller, human resources, and *to Mr. Roberts himself.* In the email to SAIC management, human resources, *and Mr. Roberts*, Defendant Collins wrote, "Brent, you and I must keep physical [sic] away from Mr. Roberts and not engage him at all. I have concluded there is a definite risk that his unstable behavior could escalate. This is direction [sic]. Please confirm."

44. Defendant Collins' "stay away from Dev'd Roberts" email and characterization of Mr. Roberts as "unstable" and a risk of physical violence based on false, discriminatory tropes and stigma that veterans and other persons with PTSD are dangerous. In fact, Mr. Roberts never physically threatened or posed any sort of physical risk to anyone at SAIC, nor had he exhibited "unstable behavior."

45. Defendant Collins' email violated numerous SAIC policies and protocols and constituted disability discrimination and retaliation. The email also was retaliation for Mr. Roberts engaging in protected activity and reporting SAIC's violations of law and gross contract mismanagement. The email was also clearly intended to damage Mr. Roberts' credibility and reputation, which it did.

46. After the "stay away from Dev'd Roberts" email, Mr. Roberts reported it to SAIC

11

internal audit and management and opposed it for being illegal disability discrimination. Mr. Roberts' reports to SAIC about the email included an April 11, 2021, email to Director of Launch and Missile Programs Miller in which Mr. Roberts also reiterated that he had previously reported other illegal conduct by SAIC, including fraudulent billing practices.

47. In response to Defendant Collins' overt disability discrimination, SAIC concluded that Defendant Collins "was not qualified to make such an allegation" and the "stay away from Dev'd Roberts" was inappropriate and unacceptable, but only gave Collins a verbal warning for his conduct.

48. After the "stay away from Dev'd Roberts" email, SAIC continued to escalate its retaliation and disability discrimination. In or about April 2021, SAIC *intentionally* targeted and audited Mr. Roberts' based on the false claims by Defendant/Deputy Program Manager Collins and/or Defendant/Program Manager Smith that Roberts posed a threat for potential workplace violence.

49. SAIC's audit of Mr. Roberts' emails singled Mr. Roberts out and was intended to help find some basis for taking further action against him. As a result of the audit, SAIC informed Mr. Roberts that he had committed a security violation by improperly forwarding work emails to his personal email account.

50. Numerous SAIC employees besides Mr. Roberts also forwarded SAIC emails to their personal email addresses because of a technical problem with SAIC's information system. This problem had been previously presented to SAIC's management who failed to take action to correct the issue.

51. On or about April 14, 2021, in response to the SAIC audit, Mr. Roberts sent an email to Major Tyler Paffett with the United States government self-reporting that he had

forwarded SAIC and government information to his personal e-mail address. Mr. Roberts also explained that he had previously reported to his SAIC management team important issues, including illegal billing, security concerns, harassment and other issues. Mr. Roberts stated that he believed SAIC was attacking him in response to his reports and requested "whistleblower protection." Major Paffett responded to Mr. Roberts that he would review the matter and was supportive of him. The government ultimately took no action against Mr. Roberts and he retained his full security clearance.

52.     On or about April 21, 2021, while Mr. Roberts was still taking leave following the "stay away from Dev'd Roberts" email, Defendant/Program Director Smith unexpectedly emailed Mr. Roberts demanding that Roberts report to SAIC's Buena Vista office the following Monday or SAIC would terminate his employment. Mr. Roberts had been working from home, along with numerous other SAIC employees, for many months with SAIC's full knowledge and approval. He had also been on leave approved by SAIC following the "stay away from Dev'd Roberts" email. Defendant Smith's demand that Mr. Roberts return and work on-site was further discrimination and retaliation, and also was completely at odds with the allegations that Mr. Roberts was "unstable" and a risk for physical violence.

53.     Mr. Roberts reported Defendant Smith's April 21, 2021, email to human resources and Director Miller, stating that he believed Smith's directive to return to work and threat to terminate was yet another example of being targeted and singled out.

54.     On or about April 28, 2021, after months of retaliation, harassment and discrimination, SAIC terminated Mr. Roberts' employment on a phone call. During the call, SAIC HR indicated the reason for the termination was because of the Written Warning SAIC gave to Mr. Roberts in February but would not provide any further explanation. SAIC provided Mr.

Roberts a letter later that day providing a different reason for his termination – that he was being terminated for violating SAIC's Information Systems Security policy.

55. Both of the alleged reasons given by SAIC for Mr. Roberts' termination are false and pretextual. Other employees reported forwarding work emails to their personal email account just as Mr. Roberts had done but none were terminated or even disciplined.

56. Defendants' alleged reasons for terminating Mr. Roberts are false and pretextual and were intended to cover up for Defendants' illegal motives and actions.

## CAUSES OF ACTION

### COUNT ONE:
### VIOLATION OF THE NATIONAL DEFENSE AUTHORIZATION ACT

57. Plaintiff reasserts and incorporates the allegations contained in this complaint as if fully stated herein. Each individual cause of action is pled in addition to or in the alternative to the other claims in this complaint.

58. Defendant SAIC is a contractor and/or subcontractor of the military and federal government.

59. Plaintiff reported violations of laws, rules or regulations, abuse of authority and/or gross mismanagement related to military and federal contracts covered by the National Defense Authorization Act ("NDAA"), 10 U.S.C. § 4701, and/or 41 U.S.C. § 4712 and/or 10 U.S.C. § 2409, 41 U.S.C. § 2409 or other applicable codification, ("NDAA"), as amended.

60. Plaintiff made these reports to SAIC management officials who had the responsibility to investigate, discover or address misconduct.

61. Defendant SAIC terminated Plaintiff in reprisal for his reports and protected activity.

62. Defendant SAIC violated the NDAA.

## COUNT TWO:
## VIOLATION OF THE FALSE CLAIMS ACT

63. Plaintiff reasserts and incorporates the allegations contained in this complaint as if fully stated herein. Each individual cause of action is pled in addition to or in the alternative to the other claims in this complaint.

64. Defendant SAIC was fraudulently billing the US government and military on defense contracts in violation of the False Claims Act, 31 U.S.C. §3730 et seq., as amended.

65. Plaintiff reported that fraud to Defendant SAIC management to stop the fraudulent conduct.

66. Therefore, Plaintiff engaged in "efforts to stop 1 or more violations of this subchapter" and engaged in protected activity under the statute, including 31 U.S.C. §3730(h)(1).

67. Defendant SAIC knew that Plaintiff engaged in protected activity and terminated Plaintiff's employment because he engaged in this protected activity.

68. Defendant SAIC violated the False Claims Act.

## COUNT THREE:
## DISABILITY DISCRIMINATION IN VIOLATION
## OF THE NEW MEXICO HUMAN RIGHTS ACT

69. Plaintiff reasserts and incorporates the allegations contained in this complaint as if fully stated herein. Each individual cause of action is pled in addition to or in the alternative to the other claims in this complaint.

70. Plaintiff was an employee within the meaning of the New Mexico Human Rights Act ("NMHRA"), §28-1-2 NMSA et seq.

71. Plaintiff had a physical or mental handicap (or disability) within the meaning of the NMHRA, in that he was substantially limited in a major life activity, had a record of such an impairment, and/or was regarded as having such an impairment. Plaintiff was a qualified

individual with disabilities within the meaning of the NMHRA who was able to perform the essential functions of his job with or without reasonable accommodations.

72. Defendants SAIC, Smith and Collins are employers within the meaning of the NMHRA.

73. Defendants discriminated against Plaintiff including terminating his employment because of his handicap (or disability).

74. Defendants violated the NMHRA.

## COUNT FOUR:
## RETALIATION IN VIOLATION
## OF THE NEW MEXICO HUMAN RIGHTS ACT

75. Plaintiff reasserts and incorporates the allegations contained in this complaint as if fully stated herein.  Each individual cause of action is pled in addition to or in the alternative to the other claims in this complaint.

76. Plaintiff was an employee within the meaning of the NMHRA.

77. Defendants SAIC, Smith and Collins are employers within the meaning of the NMHRA.

78. Plaintiff engaged in protected activity under the NMHRA, including opposing unlawful discriminatory practices and participating in an investigation alleging discrimination and retaliation that violated the NMHRA.

79. Defendants retaliated and engaged in reprisal and discrimination against Plaintiff including terminating Plaintiff's employment for engaging in activity protected by the NMHRA.

80. Defendants violated the NMHRA.

## COUNT FIVE:
## DISABILITY DISCRIMNATION IN VIOLATION
## OF THE AMERICANS WITH DISABILITIES ACT

81. Plaintiff reasserts and incorporates the allegations contained in this complaint as if fully stated herein. Each individual cause of action is pled in addition to or in the alternative to the other claims in this complaint.

82. Plaintiff was an employee within the meaning of the Americans With Disabilities Act (as amended), ("ADA"), 42 U.S.C. §12101 et seq.

83. Plaintiff had a disability within the meaning of the ADA, in that he was substantially limited in a major life activity, had a record of such an impairment, and/or was regarded as having such an impairment. Plaintiff was a qualified individual with disabilities within the meaning of the ADA who was able to perform the essential functions of his job with or without reasonable accommodations.

84. Defendant SAIC is an employer within the meaning of the ADA.

85. Defendant SAIC discriminated against Plaintiff including terminating his employment because of his disability.

86. Defendant SAIC violated the ADA.

## COUNT SIX:
## RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

87. Plaintiff reasserts and incorporates the allegations contained in this complaint as if fully stated herein. Each individual cause of action is pled in addition to or in the alternative to the other claims in this complaint.

88. Plaintiff was an employee within the meaning of the ADA.

89. Defendant SAIC is an employer within the meaning of the ADA.

90. Plaintiff engaged in protected activity under the ADA, including opposing unlawful discriminatory practices and requesting reasonable accommodations under the ADA.

91. Defendant SAIC retaliated against Plaintiff including terminating his employment

for engaging in activity protected by the ADA.

92.     Defendant SAIC violated the ADA.

## COUNT SEVEN:
## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

93.     Plaintiff reasserts and incorporates the allegations contained in this complaint as if fully stated herein.  Each individual cause of action is pled in addition to or in the alternative to the other claims in this complaint.

94.     Plaintiff was an employee within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et sec., as amended ("Title VII").

95.     Defendant SAIC is an employer within the meaning of Title VII.

96.     Plaintiff engaged in protected activity under Title VII including opposing unlawful discriminatory practices and participating in an investigation alleging discrimination and retaliation that violated Title VII

97.     Defendant SAIC retaliated against Plaintiff including terminating his employment for engaging in activity protected by Title VII.

98.     Defendant SAIC violated Title VII.

## DAMAGES

99.     As a result of Defendants' violations of law, Mr. Roberts suffered actual damages in the form of lost wages and benefits.  Mr. Roberts also suffered compensatory damages, including loss of standing in the community, damage to reputation, loss of career advancement, emotional pain and suffering, loss of enjoyment of life, mental anguish and other losses.

100.    Defendants acted recklessly and/or intentionally with intent to cause harm in their conduct towards Mr. Roberts.

101. As a result of Defendants' violations of law, Plaintiff requests the Court to enter an order for all actual, economic, compensatory, punitive and other damages or remedies, equitable, statutory or otherwise, and attorney fees, expert fees, expenses and costs, that Plaintiff proves are appropriate. Plaintiff further asks the Court to enter an Order preventing Defendants from subjecting others to illegal conduct, including subjecting employees to illegal retaliation and discrimination.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendants be cited and called to answer, and that on final judgment Plaintiff be granted relief, including:

a) Damages for lost wages and benefits, past and future;

b) Compensatory damages;

c) Damages for damage to reputation, emotional distress and mental anguish;

d) Punitive damages;

d) Equitable remedies;

e) Attorney fees, expert fees, expenses and costs of suit;

f) Interest allowed by law;

g) General damages;

h) Special damages; and

i) Such other and further relief that is proven to be appropriate.

        C<small>OYLE</small> & B<small>ENOIT</small>, PLLC
        311 Montana Ave., Suite B
        El Paso, Texas 79902
        (915)532-5544
        (915) 532-5566 (Fax)

        /s/ Christopher Benoit
        Christopher Benoit
        NM Bar No. 150497
        chris@coylefirm.com

        ROBERT W. SCHMIDT LAW FIRM, PLLC
        1502 West Avenue
        Austin, Texas 78701
        (512) 484-2276
        (512) 537-0708 (Fax)
        Robert W. Schmidt
        Texas State Bar No. 17775429
        bob@robertwschmidt.com
        *Pro hac Vice Application Pending*
        ATTORNEYS FOR PLAINTIFF

## CERTIFICATION OF NON-MEMBER ASSOCIATION

In compliance with D.N.M. LR—Civ. 83.3(a)(1), I hereby certify that non-member attorney, Robert W. Schmidt is a member in good standing of the bar of the state of Texas. I will accept service and continue in the action until another New Mexico Federal Bar member is substituted.

        /s/ Christopher Benoit
        Christopher Benoit